UNITED STATES of America, Appellee,

v.

Peter B. ROBERTS, Defendant,
Appellant.

No. 94–1020.

United States Court of Appeals,
First Circuit.

Heard May 6, 1994.

Decided Oct. 27, 1994.

Diana L. Maldonado, Asst. Federal Defender, Federal Defender's Office, with whom Owen S. Walker, Chief Federal Defender, Boston, MA, was on brief for appellant.

Jeanne M. Kempthorne, Asst. U.S. Atty., with whom Donald K. Stern, U.S. Atty., Boston, MA, was on brief for the U.S.

Before CYR, BOUDIN and STAHL, Circuit Judges.

BOUDIN, Circuit Judge.

Peter C. Roberts pled guilty on September 24, 1993, to a 16–count indictment charging him with 15 counts of theft of mail by postal employee and one count of access device fraud. 18 U.S.C. §§ 1709, 1029(a)(2). A sentencing hearing was conducted and sentence was imposed on December 17, 1993. In the course of the hearing, the district court computed the total offense level as 12, *see* U.S.S.G. §§ 2B1.1, 2F1.1, and found that Roberts was in criminal history category II. The court imposed a 15–month sentence of imprisonment, which is midway in the guideline range of 12 to 18 months. On this appeal, Roberts does not contest the total offense level assigned to him but does dispute his criminal history category.

The district court determined Roberts' criminal history category by assigning Roberts one criminal history point for a 1992 state court guilty plea to charges of embezzlement by a fiduciary and larceny. *See* U.S.S.G. § 4A1.1(c). A second point was assigned because in 1986, Roberts had been charged in Massachusetts state court with operating a motor vehicle under the influence of alcohol and operating to endanger; both charges were continued by the state court without a finding, upon Roberts' admission to sufficient facts to sustain a finding of guilt. The second criminal history point was sufficient to push Roberts into category II. *See* U.S.S.G. Sentencing Table.

The main dispute on this appeal centers around the following guidelines provision contained in the paragraph that provides definitions and instructions for computing criminal history:

> Diversion from the judicial·process without a finding of guilt (*e.g.,* deferred prosecution) is not counted. A diversionary disposition resulting from a finding or admission of guilt, or a plea of *nolo contendere,* in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered, except that diversion from juvenile court is not counted.

U.S.S.G. § 4A1.2(f). The issue is how this provision applies to the disposition of the charges against Roberts in 1986 by a continuance based on admission to sufficient facts to sustain a finding of guilt.

The government has maintained throughout that Roberts' admission to sufficient facts led to a "diversionary disposition resulting from a finding or admission of guilt … in a judicial proceeding," U.S.S.G. § 4A 1.2(f), and the district court agreed. Roberts, supported by *United States v. Kozinski,* 16 F.3d 795 (7th Cir.1994), says that there was no finding or admission of "guilt," so that the outcome is governed by the first sentence of the quoted paragraph or, in any event, does not fall within the second.[1] We regard the issue as a close one that, for reasons shortly to be explained, cannot be settled definitively on this record.

The Massachusetts practice that gave rise to the disputed disposition is a composite of procedures that has been modified several times.[2] As matters stood when Roberts' case was considered in 1986, Massachusetts afforded a defendant facing charges in the state district court with several options; one of these options allowed the defendant to obtain a bench trial ("the first tier") and then, if unhappy with the outcome, to appeal to obtain a *de novo* trial in the same court before a six-person jury ("the second tier"). *See Commonwealth v. Duquette,* 386 Mass. 834, 438 N.E.2d 334 (1982). At the first tier, the defendant could also choose to forego a bench trial and advance to the second tier by admitting to sufficient facts to warrant a finding of guilt. *Duquette,* 438 N.E.2d at 338.

It appears that often in such instances a case was not advanced to the second tier but instead continued without a formal finding of guilt or innocence. In conjunction with the continuance, the court imposed conditions, such as supervision by a probation officer, restitution, or (as in this case) submission to an abuse treatment program. Technically, where a case was continued without a finding, there was no final disposition and therefore no appeal, *de novo* or otherwise.[3] On the other hand, it appears that a dissatisfied defendant could insist on a formal disposition and exercise his or her right to a trial *de novo,* expunging the first-tier disposition. *See Mann v. Commonwealth,* 359 Mass. 661, 271 N.E.2d 331, 332–33 (1971).

Roberts' argument in this case starts with the guideline language imposing criminal history points where a diversionary disposition results from "a finding or admission of guilt … in a judicial proceeding…." U.S.S.G. § 4A1.2(f). There is no evidence that the judge in Roberts' 1986 proceeding made a formal finding of guilt. There is also no indication that Roberts made an "admission of guilt" in the sense of pleading guilty or using the word "guilty" or saying "yes" when asked whether he admitted his guilt. This, says Roberts, means that under the guideline language no criminal history points can be assigned for the 1986 disposition.

---

1. Roberts also argued in the district court that operating to endanger is an offense for which no points are awarded even if there is an admission of guilt, *see* U.S.S.G. § 4A1.2(c)(1), but Roberts agrees that this does not matter because driving under the influence is counted where an admission of guilt occurs. *See* U.S.S.G. § 4A1.2, comment. (n.5).

2. The procedure was altered substantially in 1973 by statute and again by case law in 1982.

*Commonwealth v. Duquette,* 386 Mass. 834, 438 N.E.2d 334 (1982). Recently Massachusetts has abolished the *de novo* system. *Compare* Mass. Gen.L. ch. 278, § 18 (1981) *with id.* (1994 supp.).

3. Later if the defendant satisfied the conditions, the charge or charges would be dismissed. This is apparently what happened in Roberts' case, but the dismissal itself is not claimed to erase Roberts' admission.

This literal approach was apparently persuasive to the Seventh Circuit in *Kozinski*, 16 F.3d at 811–12. Under local law, an Illinois state court may defer prosecution and impose supervision either if the defendant pleads guilty or if he or she stipulates to "facts supporting the charge or a finding of guilt." *Id.* at 812. The Seventh Circuit said summarily that the latter stipulation "does not in any way equate with an admission of guilt or an adjudication of guilt" and, under the sentencing guidelines, it amounts to diversion from the judicial process "without a finding of guilt (*e.g.,* deferred prosecution)" for which no criminal history points may be awarded. *Id.* Compare *United States v. Hines*, 802 F.Supp. 559 (D.Mass.1992) (reaching the opposite result).

In this court, the government takes the view that *Kozinski* was wrongly decided, although its brief makes a half-hearted attempt to distinguish the case. We agree that the phrase "admission of guilt" does not have so clear and precise a meaning as to foreclose its extension to a defendant's admission to sufficient facts to warrant a finding of guilt. The guideline by its terms uses the word "admission" and does not require a formal plea of guilty, U.S.S.G. § 4A1.2; and the commentary speaks of counting diversionary dispositions if they involved "an admission of guilt in open court." *Id.* comment. (n.9). More important, the guideline has a *purpose* that helps us decide disputes about ambiguous language.

In determining criminal history points, the sentencing guidelines impose points automatically where there has been an "adjudication of guilt," U.S.S.G. § 4A1.2(a)(1), but merely permit the trial court to depart where the court determines that the defendant's criminal history category "does not adequately reflect the seriousness of the defendant's past criminal conduct...." U.S.S.G. § 4A1.3. This preference for adjudications of guilt presumably reflects the desire to fasten on what can readily be proved *and* the reasonable assurance that one who has pled guilty or been found guilty did commit the prior crime in question. *Cf.* Fed.R.Evid. 609 (allowing convictions to be used for impeachment).

In Massachusetts an admission to sufficient facts is apparently recorded with about the same formality as a plea, *see* Mass. R.Crim.P. 12(a)(3), and so satisfies the readily-proved criterion. Whether an admission to sufficient facts adequately assures that the defendant committed the prior crime in question may be a closer question. There are two different reasons for concern. Both exist only where the defendant's admission to sufficient facts occurs at the first tier of the process, but that is where Roberts' admission did occur.

The first concern is that a defendant who has available a trial *de novo*, even after the admission to sufficient facts, may have so little invested in the admission as to make it unreliable as an admission of guilt. Evidently, many defendants use the continuance and admission procedure to see if the condition imposed is so light as to make the matter not worth contesting. Where the offense carries little moral opprobrium and where the penalty is extremely light, one might question whether a defendant's admission to sufficient facts creates an overwhelming likelihood that the defendant has done the deeds to which he or she admitted.

But this same doubt exists wherever a defendant plea bargains for a light sentence and thereafter pleads guilty. In that instance, there would be an admission of guilt within the literal language of the guidelines, and we do not think that a court would disregard the admission of guilt merely because the defendant might have pled for opportunistic reasons. The guidelines embody all manner of compromises. A defendant who commits a new crime after creating a prior criminal record has fair warning that the record may haunt him or her in sentencing, absent quite extraordinary circumstances.

The second concern, less easily overcome, relates to process. In *Duquette*, the Supreme Judicial Court made clear that an admission to sufficient facts, where it occurs at the *second* tier, must be treated with a formality that makes it almost indistinguishable from a guilty plea. There are required warnings: the judge must "prob[e] the defendant's understanding," and must "satisfy

himself that there is a factual basis for a finding of guilty." 438 N.E.2d at 342. Where such an admission to sufficient facts occurs and is accepted at the second tier, we think that the defendant has in substance admitted to his guilt.

But *Duquette* imposed these formalities *because* at the second tier an admission to sufficient facts has the same consequences as a plea of guilty and cannot be wiped out by a *de novo* appeal. *Id.*, 438 N.E.2d at 342. The court said that it was not imposing these requirements at the first tier where an admission to sufficient facts could be treated more informally. *Id.* But it did not say how much more informally and, surprisingly, we have not discovered anything in the briefs, the record, or the cases or treatises cited to us that explains in any detail how a first tier admission to sufficient facts actually works in the courtroom. How it works matters.

Perhaps, as in a typical federal court guilty plea, the prosecutor gives a recitation of what the government would prove, *and* the defendant expressly accepts the government's version of events (possibly with qualifications), *and* the judge then determines that the admitted facts if proved would constitute the offense. This sequence, or any other that achieved the same effect, would give reasonable assurance that the defendant had confessed to certain events and that the events constituted a crime. That, in our view, would make the admission effectively an admission of guilt under the guidelines.

But in the hard-pressed conditions of a busy first-instance court, it is easy to imagine procedures that would give far less assurance. For aught we can tell, the prosecutor and the defendant or his counsel may do little more than tell the judge that the parties have agreed to dispose of the matter by a continuance, admission to sufficient facts, and a treatment program. There would be nothing reprehensible about such a procedure; but it would give one little confidence that the defendant had admitted to a crime. Indeed, it would approach the "[d]iversion from the judicial process without a finding of guilt" that the guidelines say is "not counted." U.S.S.G. § 4A1.2(f).

It is the government that is seeking to assign the extra criminal history point to Roberts and it therefore carries the burden of showing whatever facts are needed to justify the point. Here Roberts did not in formal terms admit his "guilt," and it is the government that needs to show that what happened in 1986 was *in substance* an admission of guilt. Thus, we think that the necessary details of the Massachusetts procedure are for the government to prove, whether by showing what actually happened to Roberts or by showing a regular course of practice in first-tier proceedings.

Whatever evidence the government may offer, Roberts is free to contradict it. In particular, if the government relies on evidence of general practice, Roberts should be free in our view to offer evidence that the general practice was not followed in his case and that what happened to him was inadequate to constitute an admission of guilt. Our experience with the admission to sufficient facts is too limited to treat general practice as irrebuttable.

In this case the government has not yet carried its initial burden. It is true that the government appended to its brief a detailed set of state district court procedures, adopted after *Duquette*, for continuances without a finding and for admissions to sufficient facts. Massachusetts District Court, Standards of Judicial Practice: Sentencing and Other Dispositions, Standards 3:00 to 3:04 (September 1984). But these procedures resemble what *Duquette* required for second-tier admissions and we have no idea whether or to what extent they are designed to, or do in fact, describe first-tier admissions. Enough may turn on this issue that we are not willing merely to assume that these procedures do occur in cases like Roberts.

We have noted, but do not regard as dispositive, other case law language and analogies offered by both sides. For example, the government thinks that Roberts' admission would comprise a conviction under immigration regulations, *see Molina v. INS*, 981 F.2d 14, 18 (1st Cir.1992), while Roberts points to Massachusetts caselaw limiting the collateral consequences of an admission to sufficient facts. *E.g., Santos v. Director of Division of*

*Employment Security,* 398 Mass. 471, 498 N.E.2d 118, 119 (1986). However, the concerns we have already addressed are the ones we think are of primary importance to a reasonable construction of the guideline in question.

The government asserts that even if we hold against it on the criminal history issue, we should still affirm Roberts' sentence. It points out that were Roberts assigned to criminal history category I, the 15–month sentence actually imposed would be within the 10–to–16–month imprisonment range provided for a defendant who has an offense level of 12 and a criminal history category of I. The government suggests that the district judge's choice of a sentence above the minimum in this case and his remarks at Roberts' sentencing strongly suggest that he would have sentenced Roberts to 15 months' imprisonment regardless of whether Roberts fell in category I or category II.

There are certainly occasions on which a sentencing court's comments make it clear that the judge would impose the same sentence even if a specific issue as to offense level or criminal history category were resolved differently. Sometimes judges say so explicitly; in other instances, the court's remarks or other circumstances may confirm that the sentence would have been precisely the same regardless of the finding on that issue. Where we are certain that the sentence would have been the same, we normally treat a dispute about such a finding as harmless, and affirm even if we think the finding error. *See generally Williams v. United States,* — U.S. —, —, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992).

■ In this case, the district court might well have imposed the same sentence whether Roberts had been assigned to category I or category II, but we are not certain enough to avoid a remand. The choice of sentence is usually within a permissible guideline range based primarily on the individual characteristics of the crime and the defendant's behavior. But nothing prevents a sentencing judge from being influenced by the judge's sense that the case calls for a sentence toward the top or bottom or middle of the range, *whatever that range may be.*

On remand, the district court is free to determine that the 15–month sentence imposed on Roberts as a category II defendant is also the proper sentence if Roberts is deemed a category I defendant. In that event the district court can reimpose the same sentence and the court need not determine whether criminal history category I or II is correct. Nevertheless, in that situation we think that Roberts' sentencing record could not describe him as having a criminal history record higher than category I.

If instead the district court concludes that its original sentence would or might be altered if Roberts were assigned to category I, then the government may adduce facts that would allow the district court to determine that the first-tier admission to sufficient facts was the effective equivalent of a guilty plea. Although the government here did not offer such proof in the district court, we think that it should be free to do so on remand. The interpretation of the guideline presents a close question on which this court has not previously spoken and the government's *per se* position is by no means frivolous, *see Hines,* 802 F.Supp. at 564, even though we do not accept it in full. Conversely, on remand the government is free not to offer proof and to permit Roberts to be resentenced as a category I defendant.

The outcome in this case reflects our best reading of the present guideline as applied to a peculiar procedure that the guideline drafters did not expressly address. The procedure itself may now be wholly obsolete in Massachusetts; but the device of an admission to sufficient facts endures, quite possibly with variations, in other jurisdictions. *See* Annot., 4 A.L.R. 4th 147 (1981) (collecting cases). The subject may be one that the Sentencing Commission could usefully address, either to clarify the existing guideline or to improve it.

The sentence is *vacated* and the case *remanded* for further proceedings consistent with this opinion.