USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-2142
 
 UNITED STATES,

 Plaintiff, Appellee,

 v.

 JESUS DiPINA a/k/a GUSTAVO GONSALEZ,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Ronald R. Lagueux, U.S. District Judge]

 Before

 Boudin, Circuit Judge,
 
 Bownes, Senior Circuit Judge,
 
 and Lynch, Circuit Judge.
 
 
 
 
 Carlos J. Martinez, with whom Cheryl J. Sturm was on brief,
for appellant.

 James H. Leavey, Assistant United States Attorney, with whom 
Margaret E. Curran, United States Attorney, was on brief, for
appellee.

May 27, 1999

 
 BOWNES, Senior Circuit Judge. The issue before us is
whether the sentencing guidelines, applied to the facts of this
case, permitted the sentencing court to consider the defendant's
juvenile dispositions in Rhode Island Family Court in calculating
his criminal history category. We hold that the answer depends on
certain factual determinations and the record is not clear enough
as to these issues for us to resolve the dispute. We remand for
further fact-finding and resentencing.
 Jesus DiPina pled guilty to possession with intent to
distribute more than 100 grams of heroin. See 21 U.S.C.
 841(a)(1), (b)(1)(B) (1994). As part of his plea agreement, in
exchange for his pleading guilty to the charge, the prosecution
agreed that, at sentencing, it would recommend that the district
court impose the lowest term of imprisonment computed by the court
under the sentencing guidelines. The prosecution also agreed to
recommend that DiPina receive the benefits of 18 U.S.C. 3553(f)
(1994), U.S.S.G. 5C1.1 (1997), the so-called "safety valve,"
which would exempt him from the mandatory minimum sentence of five
years' imprisonment, provided, inter alia, that his criminal
history score was no higher than one point.
 The Presentence Investigation Report (PSR) prepared by
the Probation Department listed DiPina's criminal record as
including three juvenile dispositions, all in Rhode Island Family
Court: (1) tampering with a motor vehicle, "Admits Sufficient
Facts, one year probation, special condition fifty-percent
restitution"; (2) resisting arrest, "Nolo, 16 months probation";
(3) unlawful delivery of heroin, "Admits Sufficient Facts, eighteen
months Rhode Island Training School." (Emphasis added.) The
court counted each of these dispositions as a "prior sentence"
under the sentencing guidelines, U.S.S.G. 4A1.2(a)(1), (d)(2)
(1997), and found DiPina to have four criminal history points which
put him in criminal history category III. He was therefore not
eligible for the safety valve, and the court sentenced him to the
statutory minimum of five years in prison. See 21 U.S.C. 
841(a)(1), (b)(1)(B). 
 On this appeal, DiPina does not contest the total
offense level assigned to him (23), but he does challenge his
criminal history category. He argues that two of his three prior
juvenile "sentences" for the motor vehicle and heroin offenses,
both carrying the notation "admits sufficient facts" should not
count toward his criminal history. DiPina does not dispute that
the charge of resisting arrest counts toward his criminal history,
but he contends that his history score should be limited to this
one point. If DiPina is correct as to both of the other
dispositions, then his criminal history would fall in category I
instead of category III and he would be eligible for the safety
valve.
 We review a district court's interpretation of the
sentencing guidelines de novo. See United States v. Nicholas, 133
F.3d 133, 134 (1st Cir. 1998). Unfortunately, the relevant
guidelines are hardly a model of clarity.
 We begin, as always, with the text of the relevant
sentencing guidelines. U.S.S.G. 4A1.1(a)-(c) (1997) in
pertinent part read as follows:
 4A1.1. Criminal History Category
 The total points from items (a) through (f)
 determine the criminal history category in the
 Sentencing Table in Chapter Five, Part A.

 (a) Add 3 points for each prior sentence of
 imprisonment exceeding one year and one month.

 (b) Add 2 points for each prior sentence of
 imprisonment of at least sixty days not
 counted in (a).

 (c) Add 1 point for each prior sentence not
 counted in (a) or (b), up to a total of 4
 points for this item.

 Offenses committed prior to age eighteen are not immune
from being counted under 4A1.1. The commentary to 4A1.1
explains that 4A1.2(d) applies to offenses committed prior to the
defendant's eighteenth birthday. See U.S.S.G. 4A1.1 application
note 2. Such youthful offenses are, however, treated somewhat
differently:
 (d) Offenses Committed Prior to Age 18
 . . . .
 (2) . . . .
 (A) [A]dd 2 points under
 4A1.1(b) for each adult
 or juvenile sentence to
 confinement of at least
 sixty days if the defendant
 was released from such
 confinement within five
 years of his commencement
 of the instant offense;

 (B) add 1 point under
 4A1.1(c) for each adult
 or juvenile sentence
 imposed within five years
 of the defendant's
 commencement of the instant
 offense not covered in (A).

U.S.S.G. 4A1.2(d).
 Section 4A1.2(a), one of the "definitions and
instructions for computing criminal history," includes the
following:
 (a) Prior Sentence Defined
 (1) The term "prior sentence"
 means any sentence previously
 imposed upon adjudication of
 guilt, whether by guilty plea,
 trial, or plea of nolo
 contendere, for conduct not part
 of the instant offense.

U.S.S.G. 4A1.2(a)(1).
 DiPina argues that his two contested prior juvenile
dispositions do not appear to fall within the plain meaning of
 4A1.2(a)(1), the definition of a "prior sentence," because the
record does not reflect an "adjudication of guilt," whether by
virtue of a guilty plea, trial, or plea of nolo contendere. See
United States v. Rockman, 993 F.2d 811, 813 (11th Cir. 1993)
(holding that Section 4A1.2(a)(1) is clear and unambiguous on its
face and does not cover "[s]entences imposed wherein adjudication
of guilt is withheld"). We also note that the sentencing
guidelines, as criminal laws, are subject to strict construction. 
See United States v. Khang, 904 F.2d 1219, 1222 (8th Cir. 1990)
(stating that "[t]he Sentencing Guidelines must be strictly
construed"); see also Dowling v. United States, 473 U.S. 207,
212-14 (1985) (quoting Chief Justice Marshall for "[t]he rule that
penal laws are to be construed strictly" (internal quotation marks
omitted)); United States v. Stoner, 927 F.2d 45, 47 (1st Cir. 1991)
(citing United States v. Anzalone, 766 F.2d 676, 680 (1st Cir.
1985)). 
 The government argues that DiPina's two contested prior
dispositions count toward his criminal history as a matter of law,
relying on United States v. Unger, 915 F.2d 759 (1st Cir. 1990). 
The government reasons as follows: because Unger's prior juvenile
sentences were based on admissions of "sufficient facts" in Rhode
Island Family Court, Unger controls the present case and dictates
a decision against DiPina as a matter of law. We disagree. 
 According to the government, Unger is controlling here
because allegedly "[i]t involved the same question as to the legal
significance of an 'admission of sufficient facts,' in the same
court (Rhode Island Family Court)." Gov't Br. at 8. The district
court went even further, saying that Unger "is absolutely clear
that admission of facts sufficient to convict in a juvenile
proceeding is a conviction, and a juvenile conviction can be used
to determine the criminal history category under the guidelines."
 But in Unger, we never discussed whether an "admission of
sufficient facts" satisfies the requirement in 4A1.2(a)(1) of an
"adjudication of guilt," nor of a plea of guilty or nolo. In
Unger, the defendant argued that a prior juvenile sentence should
not be counted toward his criminal history because the offense was
a "juvenile status offense." Unger, 915 F.2d at 762-63. We
rejected this contention. We held that federal, not state, law
determines what constitutes a conviction for purposes of U.S.S.G.
 4A1.2(c)(2) (mandating that sentences for "juvenile status
offenses and truancy" are "never counted"), and that the district
court must look at the substance of the underlying state offense to
determine whether it is a status offense or instead should be
counted in computing criminal history. See id. Finding that Unger
had been previously convicted of receiving stolen goods, breaking
and entering with intent to commit larceny, and assault and
battery, we concluded that "these malefactions" could in no way "be
considered [juvenile] status offenses." Id. at 763 (internal
quotation marks omitted). 
 The government observes that DiPina's prior offenses,
tampering with a motor vehicle and unlawful delivery of heroin,
cannot be considered "status offenses" any more than Unger's prior
offenses were. That is true, so far as it goes. But DiPina is not
basing his appeal on the "status offense" argument, as Unger had
done. He argues, and we agree, that Unger is distinguishable from
DiPina's prior juvenile dispositions: Unger was based on the
existence of a conviction; we held that the government had
satisfied its "initial burden of proving the fact of conviction." 
Unger, 915 F.2d at 761; see also id. at 760-61 (referring to prior
disposition as a "conviction" and an "adjudication"); id. at 762
(noting that defendant had previously been "found 'wayward'"). The
opinion does not make it clear what basis existed in the Unger
record to reach this conclusion, but whatever it was, there is no
basis in the record before us on the present appeal for us to
conclude that an express conviction or other "adjudication of
guilt," U.S.S.G. 4A1.2(a)(1), took place in DiPina's prior cases.
 While the government is correct that the factual
background of Unger was similar to this one in that "the
defendant 'admitted sufficient facts,' in Rhode Island Family
Court," Gov't Br. at 8 neither party in Unger raised the "same
question" as that before us today. Nor did we address that
question, even in passing. Where, in a prior decision, we have not
considered an issue directly and assessed the arguments of parties
with an interest in its resolution, that decision does not bind us
in a subsequent case where the issue is adequately presented and
squarely before us, merely because some of the background facts are
the same. Cf. Heck v. Humphrey, 512 U.S. 477, 482 (1994)
(rejecting Court's own dictum in prior opinion which "had no cause
to address, and did not carefully consider, the damages question
before us today"). We would not be bound even if, in Unger, we had
made a passing comment about the present issue in dictum. See
Heck, 512 U.S. at 482; Dedham Water Co., Inc. v. Cumberland Farms
Dairy, Inc., 972 F.2d 453, 459 (1st Cir. 1992) ("Dictum constitutes
neither the law of the case nor the stuff of binding precedent."). 
But the government cannot even point to dictum in Unger that
purports to bear on the present issue.
 For all these reasons, Unger does not control this case,
and we reject the government's argument that, as a matter of law,
U.S.S.G. 4A1.2(a)(1) supports the district court's adding
criminal history points based on DiPina's two prior juvenile
dispositions. 
 Instead, the applicability of 4A1.2(a)(1) will be fact-
driven. It will depend on what process was actually followed in
the case of DiPina's prior juvenile dispositions. As we discuss
infra, the record before us is insufficient; we need more facts to
be able to determine whether what happened to DiPina in Family
Court was tantamount to a guilty plea or nolo plea, bringing those
dispositions under 4A1.2(a)(1). DiPina's two dispositions based
on admission to "sufficient facts" were certainly not absolutely
identical to a nolo plea: Rhode Island Family Court allows for
dispositions that are based specifically on a "nolo" plea, as the
PSR indicates was the case for DiPina's resisting arrest
disposition. Therefore, the "admits sufficient facts" designation
in DiPina's other two juvenile dispositions must be different from
a "nolo" plea in at least some respects.
 In a slightly different context, in United States v.
Roberts, 39 F.3d 10 (1st Cir. 1994), we made it clear that it was
important to know how the process of admitting to sufficient facts
"actually works in the court room," because "[h]ow it works
matters." Id. at 13. We also set forth some indicators of what
kind of process would be sufficient to "make the admission
effectively an admission of guilt under the guidelines":
 Perhaps, as in a typical federal court guilty
 plea, the prosecutor gives a recitation of
 what the government would prove, and the
 defendant expressly accepts the government's
 version of events (possibly with
 qualifications), and the judge then determines
 that the admitted facts if proved would
 constitute an offense. This sequence, or any
 other that achieved the same effect, would
 give reasonable assurance that the defendant
 had confessed to certain events and that the
 events constituted a crime.

39 F.3d at 13.
 We also suggested a procedure that would not be
"effectively an admission of guilt under the guidelines":
 [I]n the hard-pressed conditions of a busy
 first-instance court, it is easy to imagine
 procedures that would give far less assurance. 
 For aught we can tell, the prosecutor and the
 defendant or his counsel may do little more
 than tell the judge that the parties have
 agreed to dispose of the matter by a
 continuance, admission to sufficient facts,
 and a treatment program. . . . [S]uch a
 procedure . . . would give one little
 confidence that the defendant had admitted to
 a crime. Indeed, it would approach the
 "diversion from the judicial process without a
 finding of guilt" that the guidelines say is
 "not counted." U.S.S.G. 4A1.2(f).

Roberts, 39 F.3d at 13. 
 In substance, these two scenarios provide some guidance
that may help the district court when more is known about the
Rhode Island process to decide whether admission to sufficient
facts in the juvenile court should be viewed as the equivalent of
a guilty plea or a nolo plea under U.S.S.G. 4A1.2(a)(1). We are
not, however, seeking narrowly to confine the district court's
inquiry: the phrase "admission to sufficient facts" does not
necessarily mean the same thing in every context or jurisdiction,
the Massachusetts two-step procedure appears to be unusual, and
Roberts was not an attempt to create an all-encompassing formula. 
Both sides are free to produce information on remand about how the
admission to sufficient facts procedure operates in Rhode Island
juvenile courts in general, or with reference to the specific two
instances involved in this case (if information is available), or
both. In particular, if the government relies on evidence of
general practice and on the inference that the general practice was
followed in DiPina's case, DiPina is free "to offer evidence that
the general practice was not followed in his case and that what
happened to him was inadequate to constitute" the equivalent of a
guilty plea or nolo plea. Roberts, 39 F.3d at 13. The court
should, in each instance, focus on whether the substance of the
plea is guilty or nolo, i.e., whether the defendant either
confessed to events which constituted a crime or stated his
decision not to contest such events. See id.
 Further, we are not suggesting that every admission to
sufficient facts in Rhode Island juvenile court necessarily must be
treated in the same way. For example, it might turn out to be the
fact that the admission to sufficient facts that led to DiPina's
spending eighteen months in the Rhode Island Training School might
 given the seriousness of the penalty have been accompanied by
or entailed notice and procedures that are different from those
involving the contested probation sentence. If so, and if those
procedures are tantamount to a plea of guilty or nolo, then it will
be possible for the district court to conclude that one of DiPina's
prior juvenile dispositions should be counted toward his criminal
history and one should not. In the circumstances of this case,
although we do not resolve the issue, it would appear that counting
one such prior disposition would be enough to produce the criminal
history level required to sustain DiPina's sentence in the present
case, regardless of how the other prior disposition is treated.
 As we noted in Roberts, 39 F.3d at 13, because it is the
government that is seeking to assign the extra criminal history
points to DiPina, the government "therefore carries the burden of
showing whatever facts are needed to justify the point[s]." In
this case, that means the burden is on the government to "show that
what happened in [the prior proceeding] was in substance" a plea of
guilty or nolo, id., as required by 4A1.2(a)(1), i.e., the court
must have found "that the defendant ha[s] confessed to certain
events" or that other evidence proves such events, "and that the
events constituted a crime," id.
 This is a factual question. The district court did not
resolve it and the record before us today provides insufficient
evidence for us to know which of the two polar case scenarios in
Roberts is a closer analogue to DiPina's prior juvenile
dispositions. The record simply tells us that DiPina "admitted
sufficient facts." Sufficient for what? What did he admit? Did
he admit sufficient facts which, if proved, would constitute an
offense, which might be tantamount to a plea of guilty or nolo
under the guideline? Cf. Roberts, 39 F.3d at 12-13 ("admission of
guilt" under U.S.S.G. 4A1.2(f)). Or did he instead admit no
actual facts at all, merely "tell[ing] the judge that the parties
have agreed to dispose of the problem" by an admission of
sufficient facts and the negotiated disposition? Id. at 13. 
 In Nicholas, we relied on facts "formalized in written
stipulations," even though we rejected the defendant's claim that
the government failed to meet its burden because it did not append
the actual police report to the defendant's waiver of rights
submitted to the court under Commonwealth v. Duquette, 438 N.E.2d
334, 342 (Mass. 1982). See Nicholas, 133 F.3d at 136. In the
present case, not only are there no formal written stipulations of
the facts, but the record before us does not even reflect an oral
agreement as to what facts underlay the prior juvenile
dispositions. The PSR summarizes some allegations regarding
DiPina's juvenile heroin charge (although it offered no facts as to
the motor vehicle charge). But the PSR cites no source or evidence
in support of the stated allegations and we have no reason to
believe that DiPina's "admission of sufficient facts" in Family
Court encompassed any or all of such allegations. 
 For aught we can tell, DiPina's admission was simply the
type described in the second Roberts scenario (the "busy court"),
and we have "far less assurance" that DiPina "confessed to certain
events and that the events constituted a crime." Roberts, 39 F.3d
at 13; cf. United States v. Dueno, 171 F.3d 3, 7 (1st Cir. 1999)
(analyzing prior adult conviction and concluding that there was
"insufficiently reliable evidence to ground a finding" that the
defendant's guilty plea to breaking and entering charge entailed
entry into a building as would be necessary to invoke career
offender provisions of sentencing guidelines; and deciding that
PSR's uncontradicted description of a home invasion, presumably
based on a police report (of undisclosed genesis), was insufficient
to demonstrate that defendant's prior guilty plea "constituted an
admission to the building invasion described by the police
report").
 The record does not tell us what facts DiPina admitted,
and therefore we cannot know whether what he admitted is sufficient
to satisfy the requirement of the guideline. The district court
baldly asserted, without articulating any basis or citing to Rhode
Island law, that an admission of sufficient facts is the
"equivalent of a nolo plea." That assertion was not based on the
court's actual findings of fact, and it is clearly not supported by
the present record. Nothing in the government's post-argument
submission, relying on three rules of the Rhode Island Family
Court, clearly resolves the matter in the government's favor.
 At this point, because the government has failed to
satisfy its burden on the record before us, we could simply vacate
the sentence and remand for the district court to resentence DiPina
without considering, as part of his criminal history, his prior
juvenile dispositions. Instead, we remand for a factual
determination of what judicial process was followed in DiPina's 
juvenile cases. See Roberts, 39 F.3d at 13-14. We leave it to the
district court on remand to determine the relevant facts in the
first instance. The court on remand will have to determine whether
all requirements of 4A1.2(a)(1) were met. That is, was DiPina's
"admission of sufficient facts" the functional equivalent of a
guilty plea or a nolo plea? (There apparently was no trial, the
third possibility under 4A1.2(a)(1).) If one or both of DiPina's
prior dispositions was the equivalent of a guilty plea or nolo
plea, then that disposition may be counted toward his criminal
history. On the other hand, if, after fact-finding, it appears
that all DiPina did was "submit to the court's jurisdiction," Rule
9, RIFC Rules, and accept its rehabilitative services, that is a
far cry from the Roberts scenario where "the defendant ha[s]
confessed to certain events and . . . the events constituted a
crime." Roberts, 39 F.3d at 13. If DiPina's prior juvenile
dispositions are not tantamount to a guilty plea or a nolo plea,
then they may not be counted, because U.S.S.G. 4A1.2(a)(1) does
not afford a basis for the government to add such a criminal
history point. We remind the parties that the government bears the
burden, if it wishes to add points to a defendant's criminal
history, of proving whatever facts are necessary to establish the
justification for adding such points. See Roberts, 39 F.3d at 13.
 There is another aspect to the remand which was not
discussed by the district court or the parties: the effect, if any,
to be given to U.S.S.G. 4A1.2(f), titled "Diversionary
Dispositions." Subsection 4A1.2(f) reads as follows:
 (f) Diversionary Dispositions

 Diversion from the judicial
 process without a finding of
 guilt (e.g., deferred
 prosecution) is not counted. A
 diversionary disposition
 resulting from a finding or
 admission of guilt, or a plea of
 nolo contendere, in a judicial
 proceeding is counted as a
 sentence under 4A1.1(c) even
 if a conviction is not formally
 entered, except that diversion
 from juvenile court is not
 counted.

U.S.S.G. 4A1.2(f) (second emphasis added).
 If DiPina's prior juvenile dispositions were
"diversionary dispositions," then we think it clear that Section
4A1.2(f) does not permit the district court to count those
dispositions as part of DiPina's criminal history. The last
proviso of subsection 4A1.2(f) contains a significant exception to
the counting of diversionary dispositions: "diversion from
juvenile court is not counted" toward the defendant's criminal
history. U.S.S.G. 4A1.2(f) (emphasis added); see also U.S.S.G.
 4A1.2 application note 9 (explaining that "Section 4A1.2(f)
requires counting prior adult diversionary dispositions if they
involved a judicial determination of guilt or an admission of guilt
in open court" (emphasis added)). 
 In Rhode Island, the Family Court is where juvenile
proceedings like DiPina's take place. See Rhode Island Family
Court Act, R.I. Gen. Laws 14-1-5 (1956, 1981 Reenactment) (The
Family Court has "exclusive original jurisdiction in proceedings
(A) [c]oncerning any child . . . who is: (1) [d]elinquent; [or]
(2) [w]ayward."); Bouchard v. Price, 694 A.2d 670, 672 (R.I. 1997). 
Therefore, the Rhode Island Family Court is encompassed within the
meaning of "juvenile court" in U.S.S.G. 4A1.2(f), and
diversionary dispositions in that court are not counted toward a
defendant's criminal history.
 Thus, if DiPina's prior juvenile dispositions were
"diversionary dispositions" within the meaning of 4A1.2 (f), then
they could not be counted toward his criminal history. The record
reveals nothing about whether or not they were diversionary, so the
district court must resolve this question on remand. We note that
the guidelines do not specifically define what they mean by a
"diversionary disposition," nor did the drafters make it
particularly clear what they intended to mean by that term. They
offer one, and only one, example a "deferred prosecution" which
is certainly not exhaustive. U.S.S.G. 4A1.2(f). And subsection
4A1.2(f) begins with a reference to "[d]iversion from the judicial
process." 
 In sum, on remand, the district court must first
determine whether DiPina's prior juvenile dispositions constituted 
diversions, such that subsection 4A1.2(f) applies. If so, because
Family Court is the juvenile court in Rhode Island, these
dispositions cannot be counted toward DiPina's criminal history. 
 If, on the other hand, DiPina's prior juvenile
dispositions were not diversionary dispositions, then the district
court must determine whether his admitting sufficient facts in
Rhode Island Family Court was tantamount to a plea of guilty or
nolo under U.S.S.G. 4A1.2(a)(1). That is, were those admissions
the equivalent of the first Roberts scenario, where "the defendant
ha[s] confessed to certain events" (or other evidence proves such
events) "and . . . the events constituted a crime"? Roberts, 39
F.3d at 13. If DiPina's prior juvenile dispositions were not
tantamount to a plea of guilty or nolo, then they may not be
counted toward his criminal history.
 The sentence is vacated and the case is remanded to the
district court for resentencing after making findings of fact and
rulings of law consistent with this opinion.