**UNITED STATES, Plaintiff, Appellee,**

v.

**Jesus DiPINA a/k/a Gustavo Gonsalez, Defendant, Appellant.**

**No. 98–2142.**

United States Court of Appeals, First Circuit.

Heard March 1, 1999.

Decided May 27, 1999.

Carlos J. Martinez, with whom Cheryl J. Sturm was on brief, for appellant.

James H. Leavey, Assistant United States Attorney, with whom Margaret E. Curran, United States Attorney, was on brief, for appellee.

Before Boudin, Circuit Judge, Bownes, Senior Circuit Judge,and Lynch, Circuit Judge.

BOWNES, Senior Circuit Judge.

The issue before us is whether the sentencing guidelines, applied to the facts of this case, permitted the sentencing court to consider the defendant's juvenile dispositions in Rhode Island Family Court in calculating his criminal history category. We hold that the answer depends on certain factual determinations and the record is not clear enough as to these issues for us to resolve the dispute. We remand for further fact-finding and resentencing.

Jesus DiPina pled guilty to possession with intent to distribute more than 100 grams of heroin. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(B) (1994). As part of his plea agreement, in exchange for his pleading guilty to the charge, the prosecu-

tion agreed that, at sentencing, it would recommend that the district court impose the lowest term of imprisonment computed by the court under the sentencing guidelines. The prosecution also agreed to recommend that DiPina receive the benefits of 18 U.S.C. § 3553(f) (1994), U.S.S.G. § 5C1.1 (1997), the so-called "safety valve," which would exempt him from the mandatory minimum sentence of five years' imprisonment, provided, *inter alia,* that his criminal history score was no higher than one point.[1]

The Presentence Investigation Report (PSR) prepared by the Probation Department listed DiPina's criminal record as including three juvenile dispositions, all in Rhode Island Family Court: (1) tampering with a motor vehicle, "*Admits Sufficient Facts,* one year probation, special condition fifty-percent restitution"; (2) resisting arrest, "*Nolo,* 16 months probation"; (3) unlawful delivery of heroin, "*Admits Sufficient Facts,* eighteen months Rhode Island Training School."[2] (Emphasis added.) The court counted each of these dispositions as a "prior sentence" under the sentencing guidelines, U.S.S.G. §§ 4A1.2(a)(1), (d)(2) (1997), and found DiPina to have four criminal history points which put him in criminal history category III. He was therefore not eligible for the safety valve, and the court sentenced him to the statutory minimum of five years in prison. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(B).

On this appeal,[3] DiPina does not contest the total offense level assigned to him (23), but he does challenge his criminal history category. He argues that two of his three prior juvenile "sentences"—for the motor

1. DiPina satisfies the other four requirements of § 3553(f), so those are not at issue in this appeal.

2. The PSR listed the heroin offense as adding three points to DiPina's criminal history, but, prior to sentencing, the probation officer recognized that the charge should have added only two points. *See* U.S.S.G. § 4A1.2(d)(2).

3. There were other intermediate proceedings that are immaterial to this appeal: DiPina

appealed his original sentence but the appeal was dismissed for lack of prosecution. DiPina filed a § 2255 petition based on ineffective assistance of counsel which, when it came to this court, we remanded to the district court for an evidentiary hearing. After holding a hearing, the district court vacated the original sentence and resentenced DiPina to the same sentence; this appeal followed.

vehicle and heroin offenses, both carrying the notation "admits sufficient facts"— should not count toward his criminal history. DiPina does not dispute that the charge of resisting arrest counts toward his criminal history, but he contends that his history score should be limited to this one point. If DiPina is correct as to both of the other dispositions, then his criminal history would fall in category I instead of category III and he would be eligible for the safety valve.

We review a district court's interpretation of the sentencing guidelines de novo. *See United States v. Nicholas*, 133 F.3d 133, 134 (1st Cir.1998). Unfortunately, the relevant guidelines are hardly a model of clarity.

We begin, as always, with the text of the relevant sentencing guidelines. U.S.S.G. §§ 4A1.1(a)-(c) (1997) in pertinent part read as follows:

§ 4A1.1.

*Criminal History Category*

The total points from items (a) through (f) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.

(a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.

(b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).

(c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item.

Offenses committed prior to age eighteen are not immune from being counted under § 4A1.1. The commentary to § 4A1.1 explains that § 4A1.2(d) applies to offenses committed prior to the defen-

dant's eighteenth birthday. *See* U.S.S.G. § 4A1.1 application note 2. Such youthful offenses are, however, treated somewhat differently:

(d) Offenses Committed Prior to Age 18

.　　.　　.　　.　　.

(2)....

(A) [A]dd 2 points under § 4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense;

(B) add 1 point under § 4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A).

U.S.S.G. § 4A1.2(d).[4]

Section 4A1.2(a), one of the "definitions and instructions for computing criminal history," includes the following:[5]

(a) *Prior Sentence Defined*

(1) The term "prior sentence" means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense.

U.S.S.G. § 4A1.2(a)(1).

■ DiPina argues that his two contested prior juvenile dispositions do not appear to fall within the plain meaning of § 4A1.2(a)(1), the definition of a "prior sentence," because the record does not reflect an "adjudication of guilt," whether by virtue of a guilty plea, trial, or plea of *nolo contendere*. *See United States v. Rockman*, 993 F.2d 811, 813 (11th Cir. 1993) (holding that Section 4A1.2(a)(1) is clear and unambiguous on its face and does not cover "[s]entences imposed wherein adjudication of guilt is withheld").

---

**4.** Thus, for example, where a prior sentence of confinement greater than thirteen months was imposed for an offense committed prior to the defendant's eighteenth birthday, § 4A1.2(d) reduces from three to two the number of points added to the defendant's criminal history for such a sentence, com-

pared with § 4A1.1(a)'s treatment of an adult offender.

**5.** This section is cross-referenced in § 4A1.1, application notes 2 and 3, each of which states: "The term 'prior sentence' is defined at § 4A1.2(a)."

We also note that the sentencing guidelines, as criminal laws, are subject to strict construction. *See United States v. Khang,* 904 F.2d 1219, 1222 (8th Cir.1990) (stating that "[t]he Sentencing Guidelines must be strictly construed"); *see also Dowling v. United States,* 473 U.S. 207, 212–14, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985) (quoting Chief Justice Marshall for "[t]he rule that penal laws are to be construed strictly" (internal quotation marks omitted)); *United States v. Stoner,* 927 F.2d 45, 47 (1st Cir.1991) (citing *United States v. Anzalone,* 766 F.2d 676, 680 (1st Cir.1985)).

The government argues that DiPina's two contested prior dispositions count toward his criminal history as a matter of law, relying on *United States v. Unger,* 915 F.2d 759 (1st Cir.1990). The government reasons as follows: because Unger's prior juvenile sentences were based on admissions of "sufficient facts" in Rhode Island Family Court, *Unger* controls the present case and dictates a decision against DiPina as a matter of law. We disagree.

According to the government, *Unger* is controlling here because allegedly "[i]t involved the same question as to the legal significance of an 'admission of sufficient facts,' in the same court (Rhode Island Family Court)." Gov't Br. at 8. The district court went even further, saying that *Unger* "is absolutely clear that admission of facts sufficient to convict in a juvenile proceeding is a conviction, and a juvenile conviction can be used to determine the criminal history category under the guidelines."

But in *Unger,* we never discussed whether an "admission of sufficient facts" satisfies the requirement in § 4A1.2(a)(1) of an "adjudication of guilt," nor of a plea of guilty or *nolo.* In *Unger,* the defendant argued that a prior juvenile sentence should not be counted toward his criminal history because the offense was a "juvenile status offense." [6] *Unger,* 915 F.2d at 762–63. We rejected this contention. We held that federal, not state, law determines what constitutes a conviction for purposes of U.S.S.G. § 4A1.2(c)(2) (mandating that sentences for "juvenile status offenses and truancy" are "never counted"), and that the district court must look at the substance of the underlying state offense to determine whether it is a status offense or instead should be counted in computing criminal history. *See id.* Finding that Unger had been previously convicted of receiving stolen goods, breaking and entering with intent to commit larceny, and assault and battery, we concluded that "these malefactions" could in no way "be considered [juvenile] status offenses." *Id.* at 763 (internal quotation marks omitted).

■ The government observes that DiPina's prior offenses, tampering with a motor vehicle and unlawful delivery of heroin, cannot be considered "status offenses" any more than Unger's prior offenses were. That is true, so far as it goes. But DiPina is not basing his appeal on the "status offense" argument, as Unger had done. [7] He argues, and we agree, that

---

**6.** Unger also argued that his uncounseled prior conviction could not be counted toward his criminal history. We agreed with the principle, *see* U.S.S.G. § 4A1.2, application note 6 ("Sentences resulting from convictions that ... have been ruled constitutionally invalid are not to be counted" in the criminal history score.), but found that the defendant had waived his right to counsel knowingly and intelligently.

**7.** The government contends that DiPina only argued the "status offense" point at the district court level, and he therefore should be limited to that issue on appeal. We disagree. DiPina fairly raised in district court the pro-

priety of his sentencing, in particular the appropriateness of counting his juvenile dispositions toward his criminal history. The *"status offense"* point was only one part of his argument: counsel also stated that *"*DiPina's convictions are not really convictions. I mean, they're admissions to sufficient facts.*"* DiPina's counsel disagreed with the court that that is "the same thing" as a guilty plea, and DiPina himself told the district court that, at his juvenile hearing, he "was just basically told what to say." Counsel also argued that DiPina was "sentenced to training school," which is "a super parent," not the same as a sentence for an adult criminal

*Unger* is distinguishable from DiPina's prior juvenile dispositions: *Unger* was based on the existence of a conviction; we held that the government had satisfied its "initial burden of proving the fact of conviction." *Unger*, 915 F.2d at 761; *see also id.* at 760–61 (referring to prior disposition as a "conviction" and an "adjudication"); *id.* at 762 (noting that defendant had previously been "found 'wayward'"). The opinion does not make it clear what basis existed in the *Unger* record to reach this conclusion, but whatever it was, there is no basis in the record before us on the present appeal for us to conclude that an express conviction or other "adjudication of guilt," U.S.S.G. § 4A1.2(a)(1), took place in DiPina's prior cases.

■ While the government is correct that the factual background of *Unger* was similar to this one—in that "the defendant 'admitted sufficient facts,' in Rhode Island Family Court," Gov't Br. at 8—neither party in *Unger* raised the "same question" as that before us today. Nor did we address that question, even in passing. Where, in a prior decision, we have not considered an issue directly and assessed the arguments of parties with an interest in its resolution, that decision does not bind us in a subsequent case where the issue is adequately presented and squarely before us, merely because some of the background facts are the same. *Cf. Heck v. Humphrey*, 512 U.S. 477, 482, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (rejecting Court's own dictum in prior opinion which "had no cause to address, and did not

carefully consider, the damages question before us today"). We would not be bound even if, in *Unger*, we had made a passing comment about the present issue in dictum. *See Heck*, 512 U.S. at 482, 114 S.Ct. 2364; *Dedham Water Co., Inc. v. Cumberland Farms Dairy, Inc.*, 972 F.2d 453, 459 (1st Cir.1992) ("Dictum constitutes neither the law of the case nor the stuff of binding precedent."). But the government cannot even point to dictum in *Unger* that purports to bear on the present issue.

■ For all these reasons, *Unger* does not control this case, and we reject the government's argument that, as a matter of law, U.S.S.G. §§ 4A1.2(a)(1) supports the district court's adding criminal history points based on DiPina's two prior juvenile dispositions.

Instead, the applicability of § 4A1.2(a)(1) will be fact-driven. It will depend on what process was actually followed in the case of DiPina's prior juvenile dispositions. As we discuss *infra*, the record before us is insufficient; we need more facts to be able to determine whether what happened to DiPina in Family Court was tantamount to a guilty plea or *nolo* plea, bringing those dispositions under § 4A1.2(a)(1). DiPina's two dispositions based on admission to "sufficient facts" were certainly not absolutely identical to a *nolo* plea: Rhode Island Family Court allows for dispositions that are based specifically on a *"nolo"* plea, as the PSR indicates was the case for DiPina's resisting

---

conviction. Indeed, the district court, relying on *Unger*, told counsel that he could "make [his] argument at the Court of Appeals."

It is true that DiPina has refined his argument on appeal and abandoned the "status offense" argument. But the shift of emphasis in this appeal is within permissible bounds. *See United States v. One Urban Lot*, 885 F.2d 994, 1001–02 (1st Cir.1989) (reiterating "our philosophy that cases should be resolved on the merits," and distinguishing between arguing an *issue* on appeal that was not argued below—e.g., that the district court should not have entered a default judgment—and simply

offering an additional *reason* why an issue already raised and argued should be resolved in a party's favor on appeal, even though appellant had failed to raise the issue of whether Rule 55(c) relief should be granted and had failed to file a form claiming the right to forfeited property). *Cf. Michelson v. Digital Financial Servs.*, 167 F.3d 715, 719–20, 727 (1st Cir.1999) (refusing to consider arguments waived even though they are ill-defined, disorganized, and badly explained in appellate brief, if adequately raised and supported; but deeming waived challenges to other grounds for summary judgment that are not discussed at all).

arrest disposition. Therefore, the "admits sufficient facts" designation in DiPina's other two juvenile dispositions must be different from a *"nolo"* plea in at least some respects.

In a slightly different context, in *United States v. Roberts*, 39 F.3d 10 (1st Cir. 1994),[8] we made it clear that it was important to know how the process of admitting to sufficient facts "actually works in the court room," because "[h]ow it works matters." *Id.* at 13. We also set forth some indicators of what kind of process would be sufficient to "make the admission effectively an admission of guilt under the guidelines":

> Perhaps, as in a typical federal court guilty plea, the prosecutor gives a recitation of what the government would prove, *and* the defendant expressly accepts the government's version of events (possibly with qualifications), *and* the judge then determines that the admitted facts if proved would constitute an offense. This sequence, or any other that achieved the same effect, would give reasonable assurance that the defendant had confessed to certain events and that the events constituted a crime.

39 F.3d at 13. [9]

We also suggested a procedure that would *not* be "effectively an admission of guilt under the guidelines":

> [I]n the hard-pressed conditions of a busy first-instance court, it is easy to imagine procedures that would give far less assurance. For aught we can tell, the prosecutor and the defendant or his counsel may do little more than tell the judge that the parties have agreed to dispose of the matter by a continuance, admission to sufficient facts, and a treatment program.... [S]uch a procedure

---

8. *Roberts* involved a continuance without a finding at the first tier of Massachusetts' archaic two-tier system. Thus, *Roberts* applied the "diversionary disposition" subsection of the guidelines, § 4A1.2(f), and specifically noted its distinction from the actual "adjudication of guilt" required under § 4A1.2(a)(1). *See Roberts*, 39 F.3d at 12. We concluded that "[t]his preference for adjudications of guilt presumably reflects the desire to fasten on what can readily be proved *and* the reasonable assurance that one who has pled guilty or been found guilty did commit the prior crime in question." *Id.*

Under Massachusetts' then-existing two-tier system, a defendant who was found guilty or admitted guilt at the first stage had a right to appeal to the second tier to obtain a de novo trial before a jury in the same court. *Id.* at 11–12. Roberts had "admitted sufficient facts" at the first stage of that trial de novo system. In that context, we were troubled by the possibility that an admission to sufficient facts might not adequately assure that the defendant committed the prior crime in question. We were concerned that "a defendant who has available a trial *de novo*, even after the admission to sufficient facts, may have so little invested in the admission as to make it unreliable as an admission of guilt." *Id.* at 12. Many defendants apparently admitted sufficient facts in order to see whether the condition imposed would be "so light as to make the matter not worth contesting." *Id.* This led us to "question whether a defen-

dant's admission to sufficient facts creates an overwhelming likelihood that the defendant has done the deeds to which he or she admitted." *Id.*
We remanded for fact-finding to determine whether "what happened" in Roberts' prior cases "was *in substance* an admission of guilt," which was the applicable guideline standard under § 4A1.2(f). *See also Nicholas*, 133 F.3d at 134 (holding that a prior admission of sufficient facts was countable, even without a sentence being imposed, where the defendant had signed a *"Duquette* waiver" of his right to appeal to the second tier of the Massachusetts two-tier process, under *Commonwealth v. Duquette*, 386 Mass. 834, 438 N.E.2d 334, 342 (1982)). Both *Nicholas* and *Roberts* involved adult, not juvenile, defendants, which could make their admissions more reliable indications that the defendants committed the charged crimes.

9. *Cf. United States v. Morillo*, 178 F.3d 18, 20, 21 (1st Cir.1999) (holding that adult prior sentence based on continuance without a finding was properly counted as a "diversionary disposition resulting from a[n] ... admission of guilt" under § 4A1.2(f), where Massachusetts statute required judge to "conduct a hearing and satisfy himself that there is a factual basis for the charge," and where court had "found that the facts *as related by the prosecution and admitted by the defendant* would support a conviction") (*citing Roberts*, 39 F.3d at 13).

... would give one little confidence that the defendant had admitted to a crime. Indeed, it would approach the "diversion from the judicial process without a finding of guilt" that the guidelines say is "not counted." U.S.S.G. § 4A1.2(f).

*Roberts,* 39 F.3d at 13.

■ In substance, these two scenarios provide some guidance that may help the district court—when more is known about the Rhode Island process—to decide whether admission to sufficient facts in the juvenile court should be viewed as the equivalent of a guilty plea or a *nolo* plea under U.S.S.G. § 4A1.2(a)(1).[10] We are not, however, seeking narrowly to confine the district court's inquiry: the phrase "admission to sufficient facts" does not necessarily mean the same thing in every context or jurisdiction, the Massachusetts two-step procedure appears to be unusual, and *Roberts* was not an attempt to create an all-encompassing formula. Both sides are free to produce information on remand about how the admission to sufficient facts procedure operates in Rhode Island juvenile courts in general, or with reference to the specific two instances involved in this case (if information is available), or both. In particular, if the government relies on evidence of general practice and on the inference that the general practice was followed in DiPina's case, DiPina is free "to offer evidence that the general practice was not followed in his case and that what happened to him was inadequate to constitute" the equivalent of a guilty plea or *nolo* plea. *Roberts,* 39 F.3d at 13. The court should, in each instance, focus on whether the substance of the plea is guilty or *nolo,* i.e., whether the defendant either confessed to events which constituted a crime or

stated his decision not to contest such events. *See id.*

Further, we are not suggesting that every admission to sufficient facts in Rhode Island juvenile court necessarily must be treated in the same way. For example, it might turn out to be the fact that the admission to sufficient facts that led to DiPina's spending eighteen months in the Rhode Island Training School might—given the seriousness of the penalty—have been accompanied by or entailed notice and procedures that are different from those involving the contested probation sentence. If so, and if those procedures are tantamount to a plea of guilty or *nolo,* then it will be possible for the district court to conclude that one of DiPina's prior juvenile dispositions should be counted toward his criminal history and one should not. In the circumstances of this case, although we do not resolve the issue, it would appear that counting one such prior disposition would be enough to produce the criminal history level required to sustain DiPina's sentence in the present case, regardless of how the other prior disposition is treated.

■ ■ As we noted in *Roberts,* 39 F.3d at 13, because it is the government that is seeking to assign the extra criminal history points to DiPina, the government "therefore carries the burden of showing whatever facts are needed to justify the point[s]."[11] In this case, that means the burden is on the government to "show that what happened in [the prior proceeding] was *in substance*" a plea of guilty or *nolo, id.,* as required by § 4A1.2(a)(1), i.e., the court must have found "that the defendant ha[s] confessed to certain events" or that other evidence proves such events, "and that the events constituted a crime," *id.*

---

10. We note that *Roberts* was decided under U.S.S.G. § 4A1.2(f) ("Diversionary Dispositions"). *See supra* at n. 8. Even if an admission to sufficient facts is the equivalent of an "admission of guilt" under § 4A1.2(f), it may or may not be tantamount to a plea of guilty or *nolo,* as required under § 4A1.2(a)(1) which applies here.

11. This burden of proof is just as applicable with respect to the requirement of a plea of guilty or *nolo* under Section 4A1.2(a)(1) as it is to the "admission of guilt" under Section 4A1.2(f).

This is a factual question. The district court did not resolve it and the record before us today provides insufficient evidence for us to know which of the two polar case scenarios in *Roberts* is a closer analogue to DiPina's prior juvenile dispositions. The record simply tells us that DiPina "admitted sufficient facts." Sufficient for what? What did he admit? Did he admit sufficient facts which, if proved, would constitute an offense, which might be tantamount to a plea of guilty or *nolo* under the guideline? *Cf. Roberts*, 39 F.3d at 12–13 ("admission of guilt" under U.S.S.G. § 4A1.2(f)). Or did he instead admit no actual facts at all, merely "tell[ing] the judge that the parties have agreed to dispose of the problem" by an admission of sufficient facts and the negotiated disposition? *Id.* at 13.

In *Nicholas*, we relied on facts "formalized in written stipulations," even though we rejected the defendant's claim that the government failed to meet its burden because it did not append the actual police report to the defendant's waiver of rights submitted to the court under *Commonwealth v. Duquette*, 386 Mass. 834, 438 N.E.2d 334, 342 (1982). *See Nicholas*, 133 F.3d at 136. In the present case, not only are there no formal written stipulations of the facts, but the record before us does not even reflect an oral agreement as to what facts underlay the prior juvenile dispositions. The PSR summarizes some allegations regarding DiPina's juvenile heroin charge (although it offered no facts as to the motor vehicle charge). But the PSR cites no source or evidence in support of the stated allegations and we have no reason to believe that DiPina's "admission of

sufficient facts" in Family Court encompassed any or all of such allegations.

For aught we can tell, DiPina's admission was simply the type described in the second *Roberts* scenario (the "busy court"), and we have "far less assurance" that DiPina "confessed to certain events and that the events constituted a crime." *Roberts*, 39 F.3d at 13; *cf. United States v. Dueno*, 171 F.3d 3, 7 (1st Cir.1999) (analyzing prior adult conviction and concluding that there was "insufficiently reliable evidence to ground a finding" that the defendant's guilty plea to breaking and entering charge entailed entry into a *building* as would be necessary to invoke career offender provisions of sentencing guidelines; and deciding that PSR's uncontradicted description of a home invasion, presumably based on a police report (of undisclosed genesis), was insufficient to demonstrate that defendant's prior guilty plea "constituted an admission to the building invasion described by the police report").

■ The record does not tell us what facts DiPina admitted, and therefore we cannot know whether what he admitted is sufficient to satisfy the requirement of the guideline. The district court baldly asserted, without articulating any basis or citing to Rhode Island law, that an admission of sufficient facts is the "equivalent of a *nolo* plea." That assertion was not based on the court's actual findings of fact, and it is clearly not supported by the present record. Nothing in the government's post-argument submission, relying on three rules of the Rhode Island Family Court, clearly resolves the matter in the government's favor.[12]

12. In its post-argument submission, the government informed us that the Rhode Island Family Court has no rule requiring the "prosecution to outline the facts it could prove prior to the admission of sufficient facts by a juvenile." The government's submission pointed out that: Rule 2 of the Rules of Juvenile Proceedings in Rhode Island Family Court ("RIFC Rules") requires that a "plain statement of the facts by reason of which the child is allegedly delinquent or wayward, in-

cluding reference to the statutory offense, if any, alleged to have been committed" be contained *within the sworn petition* for delinquency or waywardness; and that Rule 10 requires the police report to accompany the petition and be made available to the juvenile when, as here, the charge involves a crime if committed by an adult. The government also attached to its letter a copy of Rule 9 of the Family Court Rules and described some of the

At this point, because the government has failed to satisfy its burden on the record before us, we could simply vacate the sentence and remand for the district court to resentence DiPina without considering, as part of his criminal history, his prior juvenile dispositions. Instead, we remand for a factual determination of what judicial process was followed in DiPina's juvenile cases. *See Roberts*, 39 F.3d at 13–14. We leave it to the district court on remand to determine the relevant facts in the first instance. The court on remand will have to determine whether all requirements of § 4A1.2(a)(1) were met. That is, was DiPina's "admission of sufficient facts" the functional equivalent of a guilty plea or a *nolo* plea? (There apparently was no trial, the third possibility under 4A1.2(a)(1).) If one or both of DiPina's prior dispositions was the equivalent of a guilty plea or *nolo* plea, then that disposition may be counted toward his criminal history. On the other hand, if, after fact-finding, it appears that all DiPina did was "submit to the court's jurisdiction," Rule 9, RIFC Rules, and accept its rehabilitative services, that is a far cry from the *Roberts* scenario where "the defendant ha[s] confessed to certain events and ... the events constituted a crime." *Roberts*, 39 F.3d at 13. If DiPina's prior juvenile dispositions are not tantamount to a guilty plea or a *nolo* plea, then they may not be counted, because U.S.S.G. § 4A1.2(a)(1) does not afford a basis for the government to add such a criminal history point. We remind the parties that the government bears the burden, if it wishes to add points to a defendant's criminal history, of proving whatever facts are necessary to establish the justification for adding such points. *See Roberts*, 39 F.3d at 13.

There is another aspect to the remand which was not discussed by the district court or the parties: the effect, if any, to be given to U.S.S.G. § 4A1.2(f), titled "Diversionary Dispositions." Subsection 4A1.2(f) reads as follows:

(f) Diversionary Dispositions [13]

Diversion from the judicial process without a finding of guilt (e.g., deferred prosecution) is not counted. A diversionary disposition resulting from a finding or admission of guilt, or a plea of *nolo contendere*, in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered, *except that diversion from juvenile court is not counted.*

U.S.S.G. § 4A1.2(f) (second emphasis added).

If DiPina's prior juvenile dispositions were "diversionary dispositions," then we think it clear that Section 4A1.2(f) does not permit the district court to count those dispositions as part of DiPina's criminal history. The last proviso of subsection 4A1.2(f) contains a significant exception to the counting of diversionary dispositions: "diversion from juvenile court is *not* counted" toward the defendant's criminal history. U.S.S.G. § 4A1.2(f) (emphasis added); *see also* U.S.S.G. § 4A1.2 application note 9 (explaining that "Section 4A1.2(f) requires counting prior *adult* diversionary disposi-

---

defendant's rights contained in subsection (a) thereof (entitled "Arraignment").

This is not adequate, without more, to meet the government's burden under the guidelines. It says nothing about whether the juvenile's admission to sufficient facts was "effectively an admission of guilt under the guidelines." *Roberts*, 39 F.3d at 13. The government apparently relies heavily on Rule 9, but the only time Rule 9 mentions an "admission to sufficient facts," it is in the context of "admit[ting] sufficient facts *to submit to the court's jurisdiction*" (emphasis

added). Nor does the rule describe how, if at all, the judge might use this general, jurisdictional admission to determine whether there is a factual basis for proving that the juvenile took any action that constituted a crime.

13. This section is cross-referenced in § 4A1.1, application note 3: "Certain prior sentences are not counted or are counted only under certain conditions.... A diversionary disposition is counted only where there is a finding or admission of guilt in a judicial proceeding. *See* § 4A1.2(f)."

tions if they involved a judicial determination of guilt or an admission of guilt in open court" (emphasis added)).

In Rhode Island, the Family Court is where juvenile proceedings like DiPina's take place. *See* Rhode Island Family Court Act, R.I. Gen. Laws § 14–1–5 (1956, 1981 Reenactment) (The Family Court has "exclusive original jurisdiction in proceedings (A) [c]oncerning any child ... who is: (1)[d]elinquent; [or] (2)[w]ayward."); *Bouchard v. Price*, 694 A.2d 670, 672 (R.I. 1997). Therefore, the Rhode Island Family Court is encompassed within the meaning of "juvenile court" in U.S.S.G. § 4A1.2(f), and diversionary dispositions in that court are not counted toward a defendant's criminal history.

Thus, if DiPina's prior juvenile dispositions were "diversionary dispositions" within the meaning of § 4A1.2 (f), then they could not be counted toward his criminal history.[14] The record reveals nothing about whether or not they were diversionary, so the district court must resolve this question on remand. We note that the guidelines do not specifically define what they mean by a "diversionary disposition," nor did the drafters make it particularly clear what they intended to mean by that term. They offer one, and only one, example—a "deferred prosecution"—which is certainly not exhaustive. U.S.S.G. § 4A1.2(f). And subsection 4A1.2(f) begins with a reference to "[d]iversion from the judicial process."

In sum, on remand, the district court must first determine whether DiPina's prior juvenile dispositions constituted diversions, such that subsection 4A1.2(f) applies. If so, because Family Court is the juvenile court in Rhode Island, these dispositions cannot be counted toward DiPina's criminal history.

If, on the other hand, DiPina's prior juvenile dispositions were not diversionary dispositions, then the district court must

determine whether his admitting sufficient facts in Rhode Island Family Court was tantamount to a plea of guilty or *nolo* under U.S.S.G. § 4A1.2(a)(1). That is, were those admissions the equivalent of the first *Roberts* scenario, where "the defendant ha[s] confessed to certain events" (or other evidence proves such events) "and ... the events constituted a crime"? *Roberts*, 39 F.3d at 13. If DiPina's prior juvenile dispositions were not tantamount to a plea of guilty or *nolo*, then they may not be counted toward his criminal history.

The sentence is **vacated** and the case is **remanded** to the district court for resentencing after making findings of fact and rulings of law consistent with this opinion.

---

**14.** The government does not argue to the contrary. Its brief states unequivocally that "there was no diversion in either of [DiPina's] cases." The government relies on § 4A1.2(a)(1), and not on § 4A1.2(f), to justify DiPina's higher criminal history category.