# United States Court of Appeals
## For the First Circuit

No. 00-1141

UNITED STATES OF AMERICA,

Appellee,

v.

JESÚS DIPINA A/K/A GUSTAVO GONSALEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

Before

Boudin, Circuit Judge,
Bownes, Senior Circuit Judge,
and Lynch, Circuit Judge.

Carlos J. Martínez for appellant.

Donald C. Lockhart, Assistant United States Attorney, with whom Margaret E. Curran, United States Attorney, and James H. Leavey, Assistant United States Attorney, were on brief for appellee.

November 1, 2000

**BOWNES, <u>Senior Circuit Judge</u>.** This case returns to us after a remand to the district court for further consideration of the sentencing ramifications of defendant-appellant Jesús DiPina's juvenile criminal dispositions. <u>See</u> <u>United States</u> v. <u>DiPina</u>, 178 F.3d 68 (1st Cir. 1999). On remand, the district court determined that DiPina's admission of sufficient facts on juvenile heroin charges should count toward his criminal history under the United States Sentencing Guidelines, and that he was therefore ineligible for the "safety valve" provision. Accordingly, the court reimposed its previous sentence. We affirm.

## I.

On November 22, 1994, DiPina pled guilty to possession with intent to distribute more than one hundred grams of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) (1994). He entered a plea agreement in which he agreed to plead guilty to the charge in exchange for the government's promise to recommend that the district court impose the shortest term of imprisonment under the sentencing guidelines. The government also promised to recommend that DiPina receive the benefits of the "safety valve" provision, 18 U.S.C. § 3553(f), U.S.S.G. § 5C1.1 (1997), which would exempt him from the mandatory minimum sentence of five years' imprisonment. The safety valve would only apply,

however, if DiPina did not have more than one criminal history point.

The Presentence Investigation Report (PSR) prepared by the Probation Department described DiPina's criminal record as including three juvenile dispositions, all in the Rhode Island Family Court: (1) tampering with a motor vehicle, "Admits Sufficient Facts, one year probation, special condition fifty-percent restitution"; (2) resisting arrest, "Nolo, 16 months probation"; and (3) unlawful delivery of heroin, "Admits Sufficient Facts, eighteen months Rhode Island Training School." The district court counted each of these dispositions as a "prior sentence" under the sentencing guidelines. See U.S.S.G. §§ 4A1.2(a)(1), (d)(2). Accordingly, it found that DiPina had four criminal history points, placing him in criminal history category III. DiPina therefore was ineligible for the safety valve provision. On February 13, 1995, he was sentenced to the statutory minimum of five years in prison. See 21 U.S.C. §§ 841(a)(1), (b)(1)(B).

After some intermediate litigation not relevant to the present case, DiPina appealed, contending that the district court erred in determining his criminal history category. He argued that two of his three prior juvenile dispositions -- for the motor  vehicle and heroin offenses, both carrying the

notation "admits sufficient facts" -- should not count toward his criminal history.[1]  If those two dispositions were disregarded, DiPina's criminal history would be in category I instead of category III, and he would be eligible for the safety valve.  On January 29, 1999, while the appeal was pending, DiPina completed his prison term and began serving his five-year term of supervised release.

On May 27, 1999, this court held that DiPina's appeal raised issues that depended on "certain factual determinations and the record is not clear enough as to these issues for us to resolve the dispute."  See DiPina, 178 F.3d at 78.  We vacated DiPina's sentence and remanded for further proceedings, stating:

> [O]n remand, the district court must first determine whether DiPina's prior juvenile dispositions constituted diversions, such that subsection 4A1.2(f) applies.  If so, because Family Court is the juvenile court in Rhode Island, these dispositions cannot be counted toward DiPina's criminal history.
>
> If, on the other hand, DiPina's prior juvenile dispositions were not diversionary dispositions, then the district court must determine whether his admitting sufficient facts in Rhode Island Family Court was

_____

[1]At the original sentencing, DiPina did not dispute that the charge of resisting arrest counted toward his criminal history. As discussed infra, he now contends that the PSR was erroneous in stating that he pled nolo contendere to the resisting arrest charge.  Rather, DiPina says, the transcript from that disposition indicates that he admitted sufficient facts, just as in the other two dispositions at issue.

> tantamount to a plea of guilty or nolo under
> U.S.S.G. § 4A1.2(a)(1). . . If DiPina's
> prior juvenile dispositions were not
> tantamount to a plea of guilty or nolo, then
> they may not be counted toward his criminal
> history.

Id. at 78.

On remand, the district court limited its consideration to only one of DiPina's juvenile dispositions: his admission of sufficient facts as to the unlawful delivery of heroin charges, which had resulted in an eighteen-month sentence at the Rhode Island Training School (RITS). The government introduced the following evidence: On July 15, 1992, the state of Rhode Island filed four charges against DiPina based on allegations that he delivered heroin to an undercover officer in violation of R.I. Gen. Laws § 21-28-4.01(2)(a).[2] Based on the state's allegation that DiPina was a danger to the community, he was remanded to the custody of RITS. DiPina waived his right to a probable cause hearing.

On August 7, 1992, DiPina, DiPina's lawyer, and DiPina's mother signed the first page of a two-page document entitled "Request for Admission of Specific Facts or Admission" ("RFA"). The first page of the RFA described the "offense(s)"

---

[2]R.I. Gen. Laws § 21-28-4.01(2)(a) makes it a crime "for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance."

-6-

as "Ct-1 - Ct-4 unlawful delivery."  As to those offenses, DiPina affirmed that he was "request[ing] Court permission to withdraw [his] denial and to enter an ADMISSION TO SUFFICIENT FACTS OR ADMISSION."  DiPina also stated:

> I understand that the ADMISSION OF SUFFICIENT FACTS is for all purposes the same as an ADMISSION and that I will be admitting sufficient facts to substantiate the offense(s) which [have] been brought against me in the cases to which these pleas relate.

In the RFA, DiPina affirmed that by changing his plea he would be "giving up and waiving" seven enumerated rights: (1) the right to a judge trial and to an appeal of any finding of delinquency or waywardness; (2) the right to insist that the state offer evidence proving the elements of the offenses beyond a reasonable doubt; (3) the presumption of innocence; (4) the privilege against self-incrimination; (5) the right to confront and cross-examine the witnesses against him; (6) the right to present evidence and witnesses on his own behalf and to testify on his own behalf; and (7) the right to appeal the sentence imposed by the court after the entry of his admission of sufficient facts.  He also affirmed that he had received no promises other than that the court would impose a sentence of eighteen months in RITS, effective July 14, 1992, and that other pending charges would be dismissed.

Finally, DiPina affirmed that: (1) he understood that the court could "keep jurisdiction" over him until he was twenty-one years old; (2) he understood that absent the court's permission, he would not be allowed to withdraw his plea after the disposition was imposed; (3) he had discussed the RFA with his attorney, who had explained the RFA to him; (4) he had "no questions" concerning the meaning of the RFA and understood the RFA "completely"; and (5) he swore to the truth of all statements in the RFA.

DiPina's RFA was presented to the Rhode Island Family Court on August 7, 1992. DiPina's counsel confirmed that he had advised DiPina of the rights he would be waiving, and summarized the rights discussed in the RFA. The prosecutor stated that the state was prepared to prove beyond a reasonable doubt that DiPina "did deliver unlawfully heroin to an undercover officer from the Providence Police on July 1st, July 7th, July 8th and July 14th of this year."

The family court then addressed DiPina personally and established, inter alia, that DiPina: (1) was seventeen years old; (2) had entered an earlier plea before the court; (3) had been detained at RITS since July 14, 1992; (4) had not recently used drugs or alcohol; and (5) understood "each and every one of the rights" he was giving up. In response to the court's

questions, DiPina admitted that on July 1, 1992, at 1:25 p.m., he sold heroin to a man on Comstock Street in Providence, Rhode Island. DiPina further admitted that he sold heroin to the same man on July 7th, 8th and 14th in 1992. DiPina stated that each sale was for a different amount of heroin, but that he could not recall the exact amounts of heroin that he sold.

At the conclusion of the hearing, the family court pronounced the following judgment and sentence:

> I'll accept an admission of sufficient facts
> for a finding that [DiPina] is delinquent on
> all four petitions. [DiPina] is committed
> to the Training School for 18 months.

In written orders of the same date, the court stated that DiPina had been advised of his rights, had waived those rights, and had "admit[ted] sufficient facts and submit[ted] to court jurisdiction." The court entered a finding that DiPina was "delinquent" and committed him to the custody of RITS for eighteen months.

Also on that date, the family court signed a "Certificate of Judge" on the second page of the RFA. There, the court certified that the parties had provided the court with the RFA and that the court had established at the hearing that DiPina understood the rights listed in the RFA and the consequences of his plea. The court further certified: (1) "I have also been satisfied by the prosecutor's statement of the

facts, [DiPina's] answers and the content of the [RFA], that there is a factual basis for [DiPina's] plea"; and (2) "I find that this plea is made voluntarily, intelligently and with knowledge and understanding of all matters set forth in the attached [RFA]."

In determining whether this family court disposition should be counted in DiPina's criminal history, the district court first focused on the second question posed by the remand order: whether the disposition was tantamount to a guilty or nolo contendere plea. The court stated that DiPina "clearly admitted guilt of four sales of heroin to an undercover agent at four different times," and hence had essentially entered a guilty plea.

The district court then addressed the first question posed by the remand order: whether the heroin disposition was diversionary within the meaning of § 4A1.2(f). It noted that the state court had sentenced DiPina not to a treatment center, hospital or school, but to eighteen months at RITS, which it found to be a "juvenile prison" in which males who have committed serious crimes can be incarcerated until age twenty-one. The district court concluded that the heroin disposition

"was certainly not a diversion from the criminal justice system."[3]

Accordingly, the district court resentenced DiPina to sixty months' imprisonment and five years' supervised release, the same sentence that it had previously imposed. The court noted that DiPina had served the prison term, but that his term of supervised release was still in effect.[4] This appeal followed.

## II.

We begin with the text of the relevant sentencing guidelines. Sections 4A1.1(a)-(c) of the guidelines, titled "Criminal History Category," read in pertinent part:

---

[3]The district court employed the following definition of diversionary disposition:

> A diversion is when there is a disposition that takes the particular defendant out of the criminal justice system as where someone is sent, for example, to a treatment center instead of incarcerating them, where someone is sent to a hospital, or where, in the case of a juvenile, may be sent to a special school of some sort.

[4]At oral argument, DiPina stated that the district court had imposed the term of supervised release to run anew from the date of resentencing, rather than giving him credit for supervised release already served. The transcript of the resentencing, however, does not support this contention; rather, it indicates that the court simply reimposed the previous sentence, while acknowledging that DiPina had already served some of it. DiPina has not pointed to any other evidence (i.e. documentation from the Probation Department) that he has been doubly sentenced.

The total points from items (a) through (f) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.

   (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.

   (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).

   (c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item.

Under certain circumstances, offenses committed prior to age eighteen are counted under § 4A1.1.  See id., cmt. n.2 (citing § 4A1.2(d)).  As to those offenses, § 4A1.2(d)(2) instructs the sentencing court to

   (A) add 2 points under § 4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense; [and]

   (B) add 1 point under § 4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A).

U.S.S.G. § 4A1.2(d)(2).

Section 4A1.1 refers us to § 4A1.2(a) for the definition of the term "prior sentence":

(a) Prior Sentence Defined
(1) The term "prior sentence" means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense.

U.S.S.G. § 4A1.2(a)(1). Certain prior sentences, however, "are not counted or are counted only under certain conditions." § 4A1.1, cmt. n.3. Of relevance here is the "diversionary disposition," which "is counted only where there is a finding or admission of guilt in a judicial proceeding." Id. The commentary references "Diversionary Dispositions," § 4A1.2(f), which provides:

> Diversion from the judicial process without a finding of guilt (e.g., deferred prosecution) is not counted. A diversionary disposition resulting from a finding or admission of guilt, or a plea of nolo contendere, in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered, except that diversion from juvenile court is not counted.

U.S.S.G. § 4A1.2(f) (emphasis added).

**III.**

In reviewing a sentence under the guidelines, we determine the applicability of each guideline to a particular case de novo. See United States v. Cali, 87 F.3d 571, 575 (1st Cir. 1996). We review the district court's factual determinations for clear error, giving "due deference to the district court's application of the guidelines to the facts." Id. (internal quotation marks omitted).

On appeal, DiPina asserts several points: (1) the court erroneously concluded that his juvenile dispositions were

-13-

not diversionary within the meaning of § 4A1.2(f); (2) the court erroneously determined that his admission of sufficient facts in Rhode Island Family Court was tantamount to a guilty plea; (3) the court violated Fed. R. Crim. P. 32 at the resentencing; (4) the court incorrectly calculated DiPina's criminal history score; and (5) the judge was biased.

### A. "Diversionary disposition"

First, DiPina contends that his juvenile court proceedings were diversionary dispositions within the meaning of U.S.S.G. § 4A1.2(f). In our earlier decision in this case, we noted:

> [T]he guidelines do not specifically define what they mean by a "diversionary disposition," nor did the drafters make it particularly clear what they intended to mean by that term. They offer one, and only one, example -- a "deferred prosecution" -- which is certainly not exhaustive.

DiPina, 178 F.3d at 78 (citing § 4A1.2(f)). Although this court has not assembled a comprehensive definition of a diversionary disposition, our cases provide some examples. In United States v. Morillo, 178 F.3d 18, 21 (1st Cir. 1999), we held that a "continuance without a finding," based on a defendant's admission of facts sufficient for a guilty finding on charges of violating a domestic violence restraining order and threatening to commit a crime, was diversionary within the meaning of the

-14-

guidelines.  See also United States v. Nicholas, 133 F.3d 133,

133-35 (1st Cir. 1998).  We also affirmed the application of the

diversionary disposition label to an "'adjudication withheld'

battery conviction."  See United States v. Cadavid, 192 F.3d

230, 235 (1st Cir. 1999).  In these cases, either the

adjudication or the sentence was deferred in some way; in none

did the court  immediately impose a sentence of imprisonment.

This is consistent with case law from other circuits.

In United States v. Shazier, 179 F.3d 1317, 1319 (11th Cir.

1999), the Eleventh Circuit concluded that there was no

diversionary disposition where the defendant had served a

six-month prison term:  "Although not specifically defined, it

is clear that [§ 4A1.2(f)] does not apply to sentences where

confinement is imposed and served."  Id.  In United States v.

Crawford, 83 F.3d 964, 966 (8th Cir. 1996), the Eighth Circuit

rejected the defendant's contention that his juvenile sentence

for assault constituted a diversionary disposition, on the

ground that he "had completed [his] probation and community

service, and thus discharged the sentence imposed."  Id.

Without adopting wholesale the district court's

definition of "diversionary," see note 3, supra, we conclude

that there was no error in the determination that the heroin

disposition was not diversionary.  There was no deferral in the

-15-

prosecution, adjudication, or sentencing on DiPina's heroin charges and DiPina was sentenced to imprisonment. The family court entered a finding that DiPina was "delinquent" and immediately sentenced him to an eighteen-month term in the custody of RITS, of which at least seven months were actually served. RITS, the district court found, was a prison in which serious juvenile offenders were incarcerated. Cf. United States v. Unger, 915 F.2d 759, 763 (1st Cir. 1990) (assuming that a RITS sentence constituted "imprisonment"). This disposition does not, therefore, resemble cases in which courts have found diversion within the meaning of § 4A1.2(f) on the ground that the adjudication was somehow withheld, stayed, or deferred. See Morillo, 178 F.3d at 20; see also United States v. Amster, 193 F.3d 779, 779-80 (3d Cir. 1999) (diversionary disposition where defendant pled nolo contendere, "adjudication was withheld," and case was dismissed after defendant complied with certain conditions); United States v. Bagheri, 999 F.2d 80, 82-83 (4th Cir. 1993) (diversionary disposition where court imposed "probation without entry of judgment"); United States v. Rockman, 993 F.2d 811, 812-14 (11th Cir. 1993) (diversionary disposition where defendant pled nolo contendere and "the state court withheld adjudication of guilt"); United States v. Frank, 932 F.2d 700, 701 (8th Cir. 1991) (diversionary disposition

-16-

where defendant pled guilty and "the state court stayed the adjudication" and imposed probation).

DiPina argues that he was found "delinquent" in the heroin disposition, which is not the same as finding that he committed the crime.[5] Assuming this is true, it does not lead to the conclusion that dispositions involving delinquency findings are necessarily diversionary. Rhode Island has specific provisions for the diversion of juvenile offenders, which apparently were not applied to DiPina's case. R.I. Gen. Laws § 42-72-33(a) describes a "youth diversion program" that applies to certain first-time offenders between the ages of nine and seventeen "who may be the subject of a family court petition." Under this statute, "[r]eferrals to the youth diversionary program shall be served for a maximum of ninety (90) days" and certain services shall be rendered to the offenders. Id.; see also R.I. Gen. Laws § 14-1-32(4). The existence of these provisions suggests that Rhode Island does

---

[5]Rhode Island defines "delinquent" as "any child -- who has committed any offense which, if committed by an adult, would constitute a felony . . ." R.I. Gen. Laws § 14-1-3(5). It is true that Rhode Island law distinguishes between a finding of juvenile delinquency and a criminal conviction. See In re Bernard H., 557 A.2d 864, 867 (R.I. 1989); In re John D., 479 A.2d 1173, 1176 (R.I. 1984). For purposes of calculating criminal history, however, the sentencing guidelines are concerned not with prior convictions, but with "prior sentences." See U.S.S.G. §§ 4A1.1, 4A1.2(a).

-17-

not regard an adjudication of delinquency resulting in incarceration in RITS as diversionary.

More importantly, it is federal law, not Rhode Island law, that controls the analysis of whether the heroin disposition was diversionary. See Unger, 915 F.2d at 762-63. Accordingly, we focus on the substantive import of the disposition, not the state-law terminology describing it. See id.; see also United States v. Kirby, 893 F.2d 867, 868 (6th Cir. 1990) (fact that defendant had been adjudicated delinquent as a minor could be considered in determining his criminal history category under sentencing guidelines, even though adjudication of delinquency by a juvenile court could not be deemed a conviction under state law). As discussed supra, there was no deferral or diversion of DiPina's adjudication or sentencing on the heroin charges; the finding of delinquency does not change the result.

DiPina also contends that the judge erred in not considering whether his other juvenile dispositions – for disorderly conduct and tampering with a motor vehicle – were diversionary. Such analysis was not necessary, however, as the heroin disposition alone raised his criminal history points to a level at which the safety valve provision was unavailable. See DiPina, 178 F.3d at 75 ("it would appear that counting one

such prior disposition would be enough to produce the criminal history level required to sustain DiPina's sentence in the present case, regardless of how the other prior disposition is treated").

### B. **Tantamount to guilty plea**

Second, DiPina challenges the district court's conclusion that his admission of sufficient facts in the heroin disposition was tantamount to a guilty plea. In our earlier opinion, we said that in order to so conclude, "the court must have found that the defendant has confessed to certain events or that other evidence proves such events, and that the events constituted a crime." DiPina, 178 F.3d at 75 (internal quotation marks omitted). Specifically, we recommended that the district court examine factors such as whether the prosecutor recited what the state would prove if the case were to proceed to trial; whether the defendant accepted the prosecutor's version of the events; and whether the family court judge determined that the admitted facts, if proved, would constitute an offense. Id. at 74. If these factors were present, the admission of sufficient facts would likely be tantamount to a guilty or nolo plea. If, on the other hand, "the prosecutor and the defendant or his counsel . . . [did] little more than tell the judge that the parties have agreed to dispose of the matter

-19-

by a continuance, admission to sufficient facts, and a treatment program" it would not appear that the defendant had admitted to a crime. Id.

The record permits no conclusion other than that DiPina's admission of sufficient facts on the heroin charges, given what transpired at the hearing, effectively constituted a confession to events that constituted a crime. See id. at 75. During the family court hearing, the prosecutor recited what the state would prove if the matter were to proceed to trial: that DiPina "did deliver unlawfully heroin to an undercover officer from the Providence Police on July 1st, July 7th, July 8th and July 14th of [1992]." DiPina expressly and without qualification admitted those facts. Furthermore, he affirmed in the RFA that he would be "admitting sufficient facts to substantiate the offense(s) which [have] been brought against me in the cases to which these pleas relate." Finally, the family court determined that DiPina's conduct constituted an offense under Rhode Island law, R.I. Gen. Laws § 21-28-4.01(2)(a). Hence, we conclude that the district court correctly determined that the heroin disposition was equivalent to a guilty plea for sentencing purposes. We do not hold that a simple "admission to sufficient facts" is automatically enough in the absence of safeguards such as occurred here.

-20-

DiPina complains that the family court failed to inform him of all of the rights enumerated in Fed. R. Crim. P. 11. Nowhere in our earlier opinion, however, did we suggest that compliance with Rule 11 is a prerequisite to determining that an admission of sufficient facts is tantamount to a guilty or nolo contendere plea, and DiPina cites no authority to support his position. We have, in fact, previously stated that any sequence that gives "reasonable assurance that the defendant had confessed to certain events and that the events constituted a crime . . . would make the admission effectively an admission of guilt under the guidelines." United States v. Roberts, 39 F.3d 10, 13 (1st Cir. 1994). As it happens, the record supports the conclusion that the family court substantially complied with Rule 11 in the heroin disposition. The court effectively informed DiPina of the nature of the charges against him; the maximum possible penalty; his right to contest the charges and choose to proceed to trial; his right to assistance of counsel; his right against compelled self-incrimination; that by entering the plea he was waiving his right to trial; and that he was waiving his right to appeal. See Fed. R. Crim. P. 11(c). Moreover, the family court addressed DiPina and ascertained that he understood the rights he was giving up, that the plea was

entered voluntarily and was based on sufficient facts.  See Fed.
R. Crim. P. 11(d).

### C.  Fed. R. Crim. P. 32

DiPina contends that the district court violated Fed.
R. Crim. P. 32 in not providing him an opportunity for
allocution before reimposing the sentence.  This court has held,
however, that Rule 32 does not require that opportunity where
the court merely reimposes a sentence identical to one imposed
before, as long as the rationale for the sentence is the same.
See United States v. Garafano, 61 F.3d 113, 116-17 (1st Cir.
1995).  Here, the district court's rationale was identical to
that of the original sentence: that DiPina was ineligible for
the safety valve provision due to a juvenile disposition that
increased his criminal history points above one.

DiPina also asserts that the court erred in failing to
verify whether DiPina and his counsel read and discussed the PSR
and in failing to determine whether they had any objections to
it.  Nothing in the record indicates, however, that a new PSR
was issued prior to the resentencing.  See id. at 117.  Hence,
the court was under no obligation to revisit the issue.[6]  See id.

---

[6]To the extent that DiPina additionally argues that the
court erred in failing to inform him of his right to appeal at
the resentencing, his timely appeal makes clear that any such
error was harmless.  See Pequero v. United States, 526 U.S. 23,
24 (1999).

##### D.  **Calculation error**

DiPina contends that the court incorrectly calculated his criminal history points at resentencing.  He argues that the PSR erroneously stated that he had pled nolo contendere to the resisting arrest charge, while in fact he had admitted sufficient facts.[7]   Therefore, he contends, this disposition should not yield any criminal history points.

At his original sentencing, DiPina did not dispute that the charge of resisting arrest counted toward his criminal history.  Even assuming arguendo that DiPina may raise this issue now, it cannot change the outcome.  The heroin disposition alone raises DiPina's criminal history points to two.  As we have said, having more than one point makes him ineligible for the safety valve.  Hence, we need not consider any of DiPina's other juvenile dispositions.

##### E.  **Bias**

DiPina contends that the district judge exhibited bias against him based on his remarks at the resentencing.  The judge twice characterized DiPina's legal arguments as "worthless," and commented on his criminal conduct.[8]   DiPina also complains that

---

[7]He contends, moreover, that the charge was of disorderly conduct, not resisting arrest.

[8]The judge's comments included the following:

bias was evidenced by the court's reliance on Unger despite our statement that Unger did not control this case; its failure to make the necessary findings of fact and rulings of law upon remand; and its failure to comply with Rule 32.

It is unclear whether DiPina is seeking the recusal of the district judge and reversal of the resentencing, or whether he is simply requesting that any additional proceedings be prospectively assigned to a different judge. It does not appear that DiPina moved below for the judge's recusal or otherwise raised the issue of bias, and we therefore consider it waived. See In re Abijoe Realty Corp., 943 F.2d 121, 127 (1st Cir. 1991); United States v. Devin, 918 F.2d 280, 294 n.11 (1st Cir. 1990). Moreover, because we do not remand for any further

In fact the defendant was at one time sent to a special school in Narragansett, but he didn't learn anything from that, and he became a juvenile heroin dealer, just about as bad as you can be in the drug field. The worst of all drugs. The most addictive of all drugs. And he graduated. He graduated to becoming an adult heroin dealer.
* * * *
I suppose technically his supervised release was not in effect, but it certainly is going to be in effect as of now, and if he's charged with another drug offense, he'll be a violator, and we'll deal with him.
* * * *
The defendant is on his way to doing life on the installment plan. He's going to be in and out of prison most of the rest of his life because he is a habitual offender. He's a drug dealer, and he hasn't changed, apparently.

proceedings, we need not consider assigning the matter to a different judge in the future.

**<u>Affirmed.</u>**